## Levi Bennethum, Plff. in Err., *v.* John M. Long and Susan Long, His Wife, for Use of Susan Long.

In an action by a married woman and her husband against a constable, to recover damages for a wrongful levy and sale of personal property claimed by the wife as her own, the defendant requested the court to charge that if the wife received the goods from her son in consideration of services, or as a gift, and mingled them with her husband's goods in his wareroom, her act must be treated as a loan or gift to her husband; and the goods were liable to seizure by his creditors, notwithstanding she may have received them in consideration of her separate earnings to which she was entitled, having filed a petition under the act of April 3, 1872. The court answered: "This point we affirm, if the jury so finds the facts, and provided that they find that the husband actually carried on the business." *Held,* not to be error.

NOTE.—For transactions between husband and wife as constituting fraud on creditors, see note to Tibbins v. Jones, 2 Sad. Rep. 526. For the power of the married woman to purchase property, see note to Gregg v. George, 3 Sad. Rep. 522.

In the above case the married woman offered in evidence a petition file.. some years before to have secured to her her separate earnings under the act of April 3, 1872. *Held,* that there was no error in admitting the offer and in charging that the petition showed conclusively that she was entitled to her separate earnings free from the grasp of her husband's creditors.

(Argued February 29, 1888. Decided April 30, 1888.)

January Term, 1888, No. 60, E. D., before GORDON, Ch. J., PAXSON, STERRETT, GREEN, and CLARK, JJ. Error to the Common Pleas of Berks County to review a judgment on a verdict for the plaintiffs in an action of trespass, April Term, 1886, No. 74. Affirmed.

This action was brought by John M. Long and Susan Long, his wife, for use of said Susan Long, against Levi Bennethum, a constable, to recover damages for an alleged wrongful levy and sale of certain articles claimed by Susan Long as her own property. The judgments on which the executions were issued were against John M. Long.

At the trial before ERMENTROUT, J., the plaintiff offered in evidence the petition of Susan Long, asking to have her separate earnings secured to her under the act of April 3, 1872, said petition having been filed on January 13, 1873. The defendant objected to the record as irrelevant, inasmuch as a decree under the act of 1872 does not entitle a wife to her separate earnings under the facts which have already been shown in this case to exist. · Evidence admitted. Exception. [3]

The defendant asked the court to charge:

1. That if the jury believe that the furniture and business of John M. Long were transferred to Susan Long, his wife, by an arrangement between Long and Noll & Kinzie (to whom he confessed a judgment), that they should sell the goods under an execution on said judgment, and, without removing them, turn them over to said Susan Long, and take her note in payment, then there was no transfer of title from John M. Long which could affect his creditors, and that the property and business continued in him, and was liable to seizure by his creditors.

*Ans.* This point we affirm as a matter of law; but the plaintiffs do not claim any property so transferred by virtue of any such arrangement. They made no claim to this property under this arrangement. The property the plaintiffs claim is property which they allege was transferred by the son to the wife. They do not claim any property that was transferred under any arrangement made between Long and Noll & Kinzie. [1]

2. That if the jury believe that Susan Long, wife of John M. Long, received from her son certain articles of furniture and cabinet ware, some finished and some unfinished, in consideration of services or as a gift, and, having so received them, placed them in the wareroom and mixed them with the furniture and cabinet ware of her husband, which was there exposed for sale, then her act must be treated as a loan or gift to her husband; and the articles so mixed with the other goods became liable to seizure by the creditors of the husband, notwithstanding she may have received them in consideration of her separate earnings, to which she may have been entitled by virtue of a decree giving her the benefit of the act of 1872.

*Ans.* This point we affirm, if the jury so find the facts; and provided, further, that they find that the husband actually carried on the business for himself, or that the business was carried on for him or for his benefit.  [2]

The court charged, *inter alia,* as follows:

In this case the act of assembly relied upon to protect her earnings is the act of 1872.  The legislature of Pennsylvania, in order to protect a married woman's earnings, and in order to give the necessary security to the world that she was doing business under such an act, provided that whenever a married woman desired to secure her separate earnings free from the creditors of her husband, it was her duty to present a petition to the court asking permission to avail herself of the benefits of that act.

[It appears that in this case the wife, I think some time in 1873 or 1874, did so apply to this court; and upon the records of this court it appears that she was given the benefits of this act, and, in accordance with the act of assembly, the record of these proceedings shall be conclusive evidence of the right of such married woman to the benefit of the first section of this act, namely, the act allowing her to enjoy her separate earnings free from the grasp of her husband's creditors.]  [4]  So that, this petition having been presented, and this record having been offered in evidence here, it shows conclusively that this woman has a right to her separate earnings, free from the grasp of her husband's creditors.  It therefore follows that, if she earned any money, if she gained any profit from her own business, the business that she built up by her own separate means, not through any means of her husband or upon his credit, nor upon

her own individual credit, if she did not possess a separate estate, this law would say she was entitled to those separate earnings.

There has been a great deal said about the business transactions of her husband, herself, and her son. You will bear in mind that the plaintiffs do not claim all this property as the result of any business transaction which she carried on; so that, as far as any claim by virtue of business is concerned, you may dismiss that from your minds. The plaintiff claims title to these goods in this way: The walnut bedstead and the dressing bureau, she claims that her son presented to her, and therefore she would have a right to hold that property, because she has a right to receive presents and hold them against her husband's creditors.

The balance of the property, which consisted of an unfinished washstand, a sink box, two chairs, a dough tray, and two extension tables, she claims to have obtained in this way: That after her husband's failure, and when she carried on the business herself, then she was going out of business, and in November, 1885, her son contracted with her that he would furnish her flour and provisions, and that she was to do the baking and the cooking and the general housework that might be necessary, and I think mending also, of himself and such workmen as he might employ in the business which he says he then began to carry on; so that you will observe that the son contracted with the wife for her services. Therefore whatever was given under the contract was her separate earnings. She, being entitled to the provisions of the act of assembly of 1872, had a right to hire out her services to anybody that she desired; and whatever pay she got for those services, whether in money or furniture, she had a right to own, free from the grasp of her husband's creditors.

Then comes the next question. The law does not prohibit a wife from having her property in the house of her husband. The law is based upon common sense; and, as the jury well know, where husband and wife live together, the husband must have his property in that house and the wife must have her property there. So that the fact of the living in the same house does not necessarily imply that it is the husband's property. But if the proof is clear and satisfactory that it is the wife's, as I have said, the wife's property will be protected. But it is alleged by the defendant that, having received this property,

the wife took it and handed it over to the husband in his business, and permitted the husband to hold this property out before the world as his. If the wife did that, and the husband's creditors came along, although she may have owned it, the law would probably say that the creditors were entitled to that.

But what are the facts in this case? Is there any evidence in this case to show to this jury that at the time this levy was made, or from the time in November, 1885, down to the levy, that the husband ever did any business there? The husband swears that he did not; that he was away most of the time in the carpenter business. His son swears that he did not, that he carried on the business himself. The wife says he did not, that the son carried on the business; so that, if you believe the evidence of the husband, the wife, and the son, there is nothing here to show to this jury that anybody else carried on that business but the son. The defendant, however, asks you to infer (from the course of business, and the fact that the husband was there, and that he assisted occasionally in doing some work there) that it was the property of the husband, and the business of the husband, and that this property was actually turned over in point of law and fact to the husband and he was permitted to do the business. If the jury can find from this testimony that the wife turned over this property to the husband in the husband's business and permitted the husband to use it, then that property could not be protected from the creditors of the husband. But you will take this whole evidence into consideration, and you will say whether the inference that the defendant would have you draw from the testimony is to overrule the testimony of the husband, wife, and son. There is no person who swears positively that the husband was actually there, in his own name, carrying on business during that time. On the contrary, the wife, the son, and the husband all swear that nobody but the son was carrying on the business. If the jury find that that was the fact, that is the end of the defendant's case and the verdict must be for the plaintiffs for the value of these articles, with interest from March 5, 1886. The jury will recollect the articles. They were an unfinished wash stand, one sink box, two chairs, one dough tray, two extension tables, one walnut bedstead, carved and veneered, and one dressing bureau of carved walnut. Those are the articles upon which, in case of a verdict for the plaintiffs, you will place a value, and having so placed a value, calculate interest from March 5, 1886, to date.

Verdict and judgment for plaintiffs for $79.50.

The defendant thereupon took this writ, assigning for error: (1, 2) The answers to defendant's points; (3) admissions of plaintiffs' offer; and (4) the portion of the charge included within brackets.

*Wm. H. Livingood* and *Richmond L. Jones* for plaintiff in error.

*A. G. Green* and *D. H. Green* for defendants in error.

PER CURIAM:

The first assignment of error cannot be sustained, because founded on an alleged state of facts not found in the case; the second, because it was fully and fairly answered; and the third and fourth, because exception is therein taken to the admission of, and reference to, the petition of Susan Long, for the benefit of the act of the 3d of April, 1872, which was properly admitted in evidence.

The judgment is affirmed.